## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C. ANGINO, ALICE K. ANGINO, ANGINO LAW FIRM, P.C., KING DRIVE CORP., | : : : : | CIVIL ACTION NO. 1:19-CV-1618 (Chief Judge Conner) |
| **Plaintiffs** | : : | |
| **v.** | : : | |
| BRANCH BANKING AND TRUST COMPANY, | : : : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiffs commenced this lawsuit against defendant Branch Banking and Trust Company ("BB&T"), now Truist Bank ("Truist"),[1] alleging various torts based on a confession of judgment BB&T filed in state court. Truist moves to dismiss the federal complaint for failure to state a claim, challenges the standing of several plaintiffs, and seeks to strike plaintiffs' jury-trial demand. (Doc. 11). We will dismiss plaintiffs' complaint in its entirety because it fails to state a claim upon which relief can be granted.

## I.      Factual Background & Procedural History

In February 2007, plaintiffs Richard C. Angino and Alice K. Angino (the "Anginos") borrowed $2.2 million from Graystone Bank, a predecessor-in-interest to BB&T and Truist. (Doc. 1 at 2 ¶ 6). The Anginos executed a promissory note in consideration for the loan, (id.; id. at 19-21), and provided as security a mortgage to

---

[1] In December 2019, BB&T merged into Truist Bank. (See Doc. 19).

real property located at 4503 North Front Street, Harrisburg, Pennsylvania, (id. at 2 ¶ 6; id. at 192-98). This $2.2 million note is referenced by loan number ******2640 (hereinafter "Loan 2640"). (See id. at 2 ¶ 6; id. at 19-21).

Around the same time, plaintiff Angino Law Firm, P.C.'s predecessor, Angino & Rovner, P.C.—which had guaranteed Loan 2640—obtained a $1 million line of credit from Graystone Bank.[2] (Id. at 1 ¶ 1; id. at 3 ¶¶ 7, 8, 10). The law firm executed a promissory note for the line of credit, (id. at 3 ¶ 8; id. at 28-29), which was, in turn, guaranteed by the Anginos, (id. at 3 ¶ 8; id. at 31-38). This $1 million line of credit note is referenced by loan number ******2637 (hereinafter "Loan 2637"). (See Doc. 1 at 3 ¶ 8; id. at 28-29).

In February 2009, plaintiff King Drive Corp. ("King Drive"), whose sole officers and shareholders are the Anginos, became guarantor for the Anginos' and the law firm's loans. (Id. at 1 ¶ 1; id. at 4 ¶ 12; id. at 46-54). King Drive's 2009 commercial guarantee agreements expressly reference both Loan 2640 and Loan 2637. (See id. at 4 ¶ 12; id. at 46-54).

Various modifications were made to the line of credit note (Loan 2637) in the following years. (See id. at 3 ¶ 11; id. at 4 ¶¶ 13, 15; id. at 5 ¶¶ 16, 18; id. at 6 ¶ 21). In particular, in February 2013, the $1 million line of credit was replaced with a

---

[2] Richard C. Angino is an attorney, and his law firm has undergone several name changes during the relevant time period. (See Doc. 1 at 1 ¶¶ 1, 2). The law firm was formerly known as "Angino & Rovner, P.C.," and then "Angino & Lutz, P.C.," and is now "Angino Law Firm, P.C." (Id. at 1 ¶ 1). We refer to these entities collectively as "the law firm" unless differentiation is material for purposes of this Rule 12 motion.

$600,000 line of credit and a $400,000 term loan. (Id. at 6 ¶ 21; id. at 161-64); Branch Banking & Tr. Co. v. Angino Law Firm, P.C., No. 1:16-CV-712, Doc. 1-1 at 2-8 (M.D. Pa. Apr. 28, 2016). In 2016, BB&T filed suit in this court to collect on Loan 2637—both the $600,000 line of credit and the $400,000 term loan. See generally Branch Banking & Tr. Co. v. Angino Law Firm, P.C., Nos. 1:16-CV-712, 1:16-CV-713 (M.D. Pa. Apr. 28, 2016). Plaintiffs—there defendants—did not dispute the overdue principal and interest alleged but did challenge BB&T's claimed attorneys' fees and costs. See Branch Banking & Tr. Co. v. Angino Law Firm, P.C., Nos. 1:16-CV-712, 1:16-CV-713, 2018 WL 4404627, at *6 (M.D. Pa. Sept. 17, 2018), appeal filed, Nos. 19-2220, 19-2221 (3d Cir. June 3, 2019). After a bench trial, this court concluded, *inter alia*, that BB&T's claimed damages for late charges, appraisal fees, and attorneys' fees were contractually permitted and supported by a preponderance of the evidence. Id. at *6-10; (Doc. 1 at 6 ¶ 24).

On June 24, 2019, BB&T filed a complaint for confession of judgment against King Drive in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. 1 at 6-7 ¶ 25; id. at 230-38); see PA. R. CIV. P. 2951, 2955. The underlying financial instrument upon which BB&T based its confession of judgment was the $2.2 million note (Loan 2640) executed by the Anginos and guaranteed by, among others, King Drive, which matured on February 15, 2017. (See id. at 6-7 ¶¶ 25, 28; id. at 231-32). Upon maturation of Loan 2640, all outstanding principal, interest, and late charges became immediately due and payable. (See id. at 19). The state court entered judgment against King Drive for $1,704,408.50—the amount confessed by BB&T—on the same day BB&T filed its complaint. (Id. at 227). Approximately two weeks

3

later, King Drive filed a petition to strike or open the June 24, 2019 judgment. (Id. at 6-7 ¶ 25; id. at 203-25). Plaintiffs do not dispute—in the state court action or this case—that Loan 2640 is in default. (See id. at 204-10; id. at 7 ¶ 28). King Drive's petition to strike or open judgment remains pending in state court. (See Doc. 16 at 3).

Nine months prior to BB&T's confession of judgment, the 4503 North Front Street property, which was serving as security for Loan 2640, was sold by Dauphin County at a tax upset sale for unpaid real estate taxes. (See Doc. 1 at 7 ¶ 28; id. at 355-57). The tax-sale purchaser was Atlas NC I SPE, LLC ("Atlas"), a subsidiary of BB&T. (Id. at 7 ¶¶ 28-29; id. at 355-56; Doc. 14 at 3).

Plaintiffs filed the instant federal lawsuit shortly after BB&T confessed judgment against King Drive. They allege fraud (Count 1), abuse of process (Count 2), malicious use of process (Count 3), and violation of 42 PA. CONS. STAT. §§ 8351-55, known as the "Dragonetti Act" (Count 4). Truist moves to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and to strike the jury-trial demand pursuant to Rule 12(f). Truist also challenges the standing of all plaintiffs except King Drive. Truist's omnibus Rule 12 motion is fully briefed and ripe for disposition.

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[]

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 556 U.S. at 678.

**III.  Discussion**

Truist attacks the sufficiency of each claim asserted.  It also maintains that

the only plaintiff with standing to sue is King Drive.[3]  We begin with the threshold

issue of standing.

**A.    Standing**

A motion to dismiss for lack of Article III standing is an attack on subject-

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  See Davis

v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  Such jurisdictional challenges take

one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of

the pleading's factual allegations are untrue, removing the action from the court's

jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the

---

[3] Truist also asserts that the court must strike plaintiffs' jury-trial demand
because King Drive's 2009 guarantee and the underlying 2007 note waive the right
to a jury trial.  We agree.  The subject jury-trial waivers are conspicuous, broadly
worded, and unambiguously state that the parties "waive the right to *any* jury trial
in *any* action, proceeding, or counterclaim brought by either Lender or [Guarantor,
Borrower] against the other."  (Doc. 1 at 20, 25, 48 (emphasis added)).  The parties
here are sophisticated entities and Richard C. Angino is an attorney.  There is no
evidence of unequal bargaining power at the time the contracts were executed.
These facts compel the conclusion that the waivers were knowing and voluntary.
See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007).
Plaintiffs, moreover, admit that these contracts "and their applicability to the
present proceeding" are "at the very heart of the present dispute."  (Doc. 16 at 17).
Accordingly, plaintiffs have contractually waived their Seventh Amendment right to
a jury trial in this matter.

veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

Article III of the United States Constitution limits federal court jurisdiction to "cases" or "controversies." U.S. CONST. art. III, § 2. To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 (2014) (internal quotation marks omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). To avoid impermissibly assessing the merits, a court must "assume for the purposes of [a] standing inquiry that a plaintiff has stated valid legal claims." Cottrell v. Alcon Labs., 874 F.3d 154, 162 (3d Cir. 2017) (citation omitted).

Truist mounts a facial attack on the Anginos' and the law firm's standing, so we take plaintiffs' allegations as true. The gravamen of Truist's standing challenge is that the Anginos and the law firm are not parties to the underlying state court action and thus have not suffered an injury. Plaintiffs counter that because they are interrelated—e.g., the Anginos own both the law firm and King Drive—the allegedly improper confession of judgment against King Drive directly impacts the other plaintiffs' ability to obtain credit. (See Doc. 1 at 9 ¶ 35; id. at 11 ¶ 41; id. at 13 ¶ 51).

Taking these allegations as true and assuming plaintiffs have stated valid legal claims, see Cottrell, 874 F.3d at 162, we find that plaintiffs have standing to bring the instant tort claims. An improper civil judgment for over $1.7 million would undoubtedly affect plaintiffs' credit rating and their ability to obtain additional lending. Pecuniary or economic interests are "legally protected interests" for standing purposes, Cottrell, 874 F.3d at 164, and injury thereto is sufficient for Article III standing so long as it is "actual or imminent," id. at 163-64. We cannot say that, on its face, the complaint evinces an absence of constitutional standing for any of the named plaintiffs.[4]

### B. Failure to State a Claim for Relief

Truist also contends that none of plaintiffs' allegations state a claim for relief. Truist relies primarily on the plain language of the financial agreements at issue, arguing that BB&T's actions in state court were contractually permissible. We assess the sufficiency of plaintiffs' claims in turn.

---

[4] We recognize that Pennsylvania courts have held that, as a general rule, a plaintiff seeking relief under the Dragonetti Act must be a party to the allegedly wrongful legal proceeding. See, e.g., Hart v. O'Malley, 676 A.2d 222, 225 (Pa. 1996); Raynor v. D'Annunzio, 205 A.3d 1257, 1262 (Pa. Super. Ct. 2019). These cases, which sometimes invoke the term "standing," are not concerned with Article III standing and more accurately reflect statutory standing or "zone of interest" inquiries. See, e.g., Hart, 676 A.2d at 225. Because statutory standing challenges implicate Rule 12(b)(6) and not Rule 12(b)(1), Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 320 (3d Cir. 2015) (citation omitted), we reject Truist's argument for dismissal based on "lack [of] standing," which Truist asserts separately from its argument for dismissal for failure to state a claim. (See Doc. 14 at 7-12).

### 1.    *Fraud*

Under Pennsylvania law, the elements of fraud are: (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or acted recklessly as to its falsity; (3) the defendant intended to mislead the plaintiff into relying on the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the resulting injury was proximately caused by the plaintiff's justifiable reliance.  Porreco v. Porreco, 811 A.2d 566, 570 (Pa. 2002) (citing Bortz v. Noon, 729 A.2d 555, 560 (1999)).  Fraud must be alleged with particularity. FED. R. CIV. P. 9(b).

Plaintiffs proffer the following alleged material misrepresentations: (1) that BB&T was entitled to confess judgment in the first place; (2) that plaintiffs were responsible for covering costs, like flood insurance, after ownership of 4503 North Front Street was transferred to Atlas; and (3) that BB&T knew that its subsidiary's purchase of 4503 North Front Street at the tax upset sale was subject to all liens, including the 2007 mortgage executed by the Anginos.  (Doc. 1 at 8-9 ¶¶ 32-34). Plaintiffs also contend that they adequately pled reliance and damages.

We need not evaluate the alleged misrepresentations or damages because plaintiffs have not, and cannot, plead justifiable reliance.  Plaintiffs' sole contention regarding this element is that "[t]he fraud was relied upon in the entering of judgment and injured Plaintiffs . . . ."  (Doc. 1 at 9 ¶ 35).  Plaintiffs' use of the passive voice here is telling, because *who* relied upon the purported misrepresentation is dispositive for the instant Rule 12(b)(6) challenge.  To state a claim for fraud, the *plaintiff* must have detrimentally relied on the defendant's misrepresentation.  See

<u>Gibbs v. Ernst</u>, 647 A.2d 882, 889 (Pa. 1994) (citing RESTATEMENT (SECOND) OF TORTS § 525 (AM. LAW INST. 1977)).  Plaintiffs cannot state a claim for fraud because they did not rely on any representation BB&T made in the state court action.  To the contrary, they expressly *dispute* BB&T's averments in their petition to strike or open judgment.  Paragraph 35 of plaintiffs' federal complaint essentially alleges that the state court prothonotary relied upon BB&T's misrepresentations when entering judgment against King Drive.  That is not the type of reliance required for fraud.  Plaintiffs therefore have failed to state a claim for relief in Count 1.

## 2. *Abuse of Process*

Plaintiffs contend that BB&T is liable for abuse of process based on its confession of judgment.  To state a claim for abuse of process, the plaintiff must allege facts showing that (1) the defendant used legal process against the plaintiff (2) primarily to achieve a purpose for which the process was not intended (3) thereby harming the plaintiff.  <u>Clausi v. Stuck</u>, 74 A.3d 242, 248 (Pa. Super. Ct. 2013) (citation omitted).  Abuse of process is the "perversion" of otherwise proper legal process to derive an illegitimate benefit that "is not the authorized goal of the procedure." <u>Id.</u> at 248-49 (citation omitted).  The classic illustration of abuse of process is using legitimate proceedings "to coerce the payment of a claim completely unrelated to the cause of action sued upon." <u>Al Hamilton Contracting Co. v. Cowder</u>, 644 A.2d 188, 191 (Pa. Super. Ct. 1994) (citation omitted).  Other illegitimate objectives include extortion, blackmail, or coercion of "the plaintiff to take some collateral action." <u>Id.</u> at 192.  It is not enough that the defendant was motivated to carry out authorized process by bad intent or ill will toward the plaintiff; the defendant must

use legal process "as a tactical weapon" to accomplish a purpose for which the process was not designed. Id.; McGee v. Feege, 535 A.2d 1020, 1023, 1026 (Pa. 1987); P.J.A. v. H.C.N., 156 A.3d 284, 288 (Pa. Super. Ct. 2017) (per curiam).

Plaintiffs allege that BB&T filed a "frivolous" confession of judgment "for the purpose of extorting money from King Drive Corp. and harassing Plaintiffs[.]" (Doc. 1 at 11 ¶ 41). These conclusory averments are insufficient under Twombly and Iqbal to plausibly state a claim for abuse of process. Plaintiffs fail to plead any facts showing how King Drive is being "extorted" or how other plaintiffs—who are not defendants in the state court suit—are being "harassed" by BB&T's actions. Plaintiffs are presently challenging the confession of judgment in state court and, if successful, will have that judgment opened or stricken. They simply do not explain how BB&T is extorting money from them through Pennsylvania's confession-of-judgment process.

Certainly, extortion and harassment could be illegitimate, unauthorized purposes for confessing judgment. But plaintiffs' complaint is devoid of facts showing that BB&T confessed judgment for any purpose other than collecting on the underlying note. Baldly asserting that BB&T confessed judgment to extort and harass plaintiffs is equivalent to claiming that BB&T "used legal process for an improper purpose"—a legal conclusion that may be disregarded when analyzing a Rule 12(b)(6) motion. See Santiago, 629 F.3d at 131-32. Count 2 thus fails to plausibly state a claim upon which relief can be granted.

### 3. *Malicious Use of Process, Dragonetti Claim*

We need not separately discuss plaintiffs' final two counts because they are one and the same. Pennsylvania has codified the common-law tort of malicious use of process in the Dragonetti Act, 42 Pa. Cons. Stat. §§ 8351-55. See P.J.A., 156 A.3d at 286 n.1, 291-92; see also Raynor, 205 A.3d at 1262 ("[T]he Dragonetti Act subsumes any common law wrongful use of civil proceedings claim."). To assert a Dragonetti claim, the plaintiff must plead facts establishing that:

> (1) The defendant has procured, initiated or continued . . . civil proceedings against him[;]
>
> (2) The proceedings were terminated in his favor[;]
>
> (3) The defendant [acted in a grossly negligent manner or] did not have probable cause for his action[;]
>
> (4) The primary purpose for which the proceedings were brought was not that of securing the proper . . . adjudication of the claim on which the proceedings were based[; and]
>
> (5) The plaintiff has suffered damages[.]

42 Pa. Cons. Stat. §§ 8351(a), 8354; McNeil v. Jordan, 894 A.2d 1260, 1274 (Pa. 2006).

Plaintiffs falter at the second element. Nowhere in the complaint do they allege that the confession-of-judgment proceedings have terminated in their favor. *Per contra*, plaintiffs expressly admit that their petition to strike or open the state court judgment is still pending. (See Doc. 16 at 3). This is fatal to their Dragonetti claim. See Ludmer v. Nernberg, 553 A.2d 924, 926 (Pa. 1989); 42 Pa. Cons. Stat.

§§ 8351(a)(2), 8354(2).  In sum, Counts 3 and 4 fail Rule 12(b)(6) scrutiny because plaintiffs do not have a present cause of action under the Dragonetti Act.[5]

**IV.    Conclusion**

We will grant Truist's omnibus motion (Doc. 11) to the extent we find that plaintiffs have failed to state a claim upon which relief can be granted.  Accordingly, we will dismiss plaintiffs' complaint (Doc. 1) in its entirety.  Counts 3 and 4 will be dismissed without prejudice, as plaintiffs' claims under the Dragonetti Act have not yet accrued.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    March 4, 2020

---

[5] As stated above, the Anginos and the law firm may also face statutory standing barriers to asserting a Dragonetti claim because they are not parties to the underlying state court action.  See *supra* note 4.